USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:__9/14/2018___

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------- X
                        :

IN THE MATTER OF THE COMPLAINT OF  :
MANHATTAN BY SAIL, INC. and         :
SHEARWATER HOLDINGS, LTD., as Owners, :        12-CV-8182 (VEC)
Operators, and Agents of the Excursion sailing :
vessel, Shearwater Classic Schooner FOR  :       FINDINGS OF FACT &
EXONERATION FROM OR LIMITATION OF :     CONCLUSIONS OF LAW
LIABILITY.                         :
                        :
--------------------------------------------------------- X

VALERIE CAPRONI, District Judge:

       This is a limitation proceeding pursuant to the Limitation of Liability Act, 46 U.S.C. §

3051 *et seq*., and Supplemental Rule F of the Federal Rules of Civil Procedure.  Petitioners

Manhattan by Sail, Inc. and Shearwater Holdings, Ltd. (together, "Petitioners") are the

owner/operators of an eighty-two foot sailing vessel known as the Shearwater Classic Schooner

(the "Shearwater").  The Shearwater offers pleasure cruises around New York Harbor to the

general public.  The respondent is Charis Tagle, who was a customer on one such cruise on April

30, 2011.  Tagle sustained an unfortunate injury while onboard the Shearwater: a deckhand

raising the vessel's forestaysail lost control of the halyard, allowing the halyard to swing and hit

Ms. Tagle in the face.  The metal clip on the halyard – a pelican clip – knocked Ms. Tagle's

sunglasses off and caused a cut on her face.  Ms. Tagle sued the Petitioners in state court for

negligence.  In this proceeding the Petitioners seek exoneration or to limit their liability.

       After a bench trial, the Court entered judgment in favor of Petitioners.  *See* Dkt. 85 ("FF

& CL").  The Court found that Respondent had not established that Petitioners or the captain and

crew of the Shearwater had been negligent.  FF & CL ¶¶ 13-15, 18 (Conclusions of Law).  No

evidence at trial established what caused the deckhand to lose control of the halyard; perhaps he

was careless, but it was also possible that a gust of wind or an unexpected swell caused him to lose control of the line. FF & CL ¶¶ 11-13 (Findings of Fact), ¶¶ 11-13 (Conclusions of Law). Absent evidence pointing in either direction, it was this Court's view that Respondent had not carried her burden of establishing negligence.[1] FF & CL ¶ 13 (Conclusions of Law). The Court also found that Respondent had not established that an unreasonable policy or procedure was the cause of the incident. FF & CL ¶¶ 14-15 (Conclusions of Law). Respondent's primary argument at trial was that the Shearwater did not require the forestaysail halyard to be clipped onto the sail prior to each voyage. *See, e.g.*, Tr. at 60, 63, 368-70. But the Court credited Captain Zimmerman's testimony that the crew's practice was to leave the halyard clipped to the sail between cruises, FF & CL ¶ 9 (Findings of Fact), and the deckhand testified credibly that the only reason to unclip the halyard from the sail at the time of the incident would have been if the line had become fouled, FF & CL ¶¶ 11, 16 (Findings of Fact). The Court also found the captain and crew of the Shearwater to be competent and properly trained. FF & CL ¶ 15 (Conclusions of Law).

Respondent appealed, arguing solely that the Court should have applied the doctrine of *res ipsa loquitur* to infer that the deckhand, Christopher Biggins, negligently handled the line. Resp't's Opening Br., Case No. 16-0607-cv, Dkt. 44, at 13-14 (2d Cir. June 9, 2016). The Second Circuit agreed with Respondent and reversed, albeit on slightly different grounds. The Circuit held that "[i]n the absence of evidence of any cause, other than negligence, to explain why Biggins let the halyard slip dangerously out of his grasp, the only inference having a basis in the evidence was that Biggins failed to use the care and skill required of the seaman to avoid an obvious danger to a passenger." *Manhattan by Sail, Inc. v. Tagle*, 873 F.3d 177, 184 (2d Cir.

---

[1]      At the Court's suggestion, the parties provided supplemental briefing on the question of whether the doctrine of *res ipsa loquitur* might apply. *See* Dkt. 74.

2017).  The Circuit remanded with directions that the Court enter a finding that the Petitioners were negligent and proceed to the question of whether their liability should be limited to the value of the vessel.

## FINDINGS OF FACT

1.      Consistent with the mandate of the Second Circuit, the Court finds that the deckhand, Biggins, was negligent in his handling of the halyard.

2.      The Court adopts, and incorporates herein, its earlier findings that: Biggins "does not recall what led to him losing control of the line . . . ," FF & CL ¶ 12 (Findings of Fact), and "[b]etween 2001 and 2011, . . . Ms. Tagle is the only passenger who was injured because a crewmember lost control of a line," FF & CL ¶ 17 (Findings of Fact).

3.      Captain Zimmerman has been a member of the crew of the Shearwater since 2005.  Tr. at 151.  He was hired as the captain of the vessel in 2010, after receiving a captain's license from the Coast Guard.  Tr. at 152-03, 321.  Captain Zimmerman has extensive sailing experience.  Tr. at 142-50.

4.      Captain Zimmerman hired Biggins in 2007 or 2008.  Tr. at 190, 268-70.  Biggins has extensive experience sailing vessels similar to the Shearwater and also holds a captain's license from the Coast Guard.  Tr. at 269-71.

5.      Captain Zimmerman was responsible for training the crew and setting procedures for the vessel.  Tr. at 153-54, 324.  Captain Zimmerman trained Biggins.  Tr. at 190-91, 203-04.

6.      Thomas Berton is the sole officer of Shearwater Holdings and Manhattan by Sail, Inc. Tr. at 314.

7.      Captain Zimmerman prepared the Deckhand's Manual for the Shearwater at Mr. Berton's direction.  Tr. at 342-43.  The Deckhand's Manual provides that lines must be handled

carefully. Pets.' Ex. 1 at 2. Mr. Berton had limited involvement in setting the procedures for each voyage, but he would give his input to the captain if he believed Zimmerman was doing something unsafe. Tr. at 345, 359.

8.      Captain Zimmerman visually inspects the vessel and the lines before each cruise. Tr. at 198.

9.      In Captain Zimmerman's experience, Biggins always followed the Shearwater's standard operating procedures. Tr. at 191. At the time of the incident, Captain Zimmerman had never received a complaint about Biggins's operation of the vessel. Tr. at 191.

10.     At the time of the incident, Mr. Berton had never received a complaint about Captain Zimmerman's operation of the vessel or about Biggins. Tr. at 322-24. According to Mr. Berton, Biggins was a "great" deckhand, "very safe," and "very competent." Tr. at 323.

11.     At the time of the incident involving Ms. Tagle, Captain Zimmerman was at the wheel of the vessel, near the stern. Tr. at 187. Captain Zimmerman did not observe Biggins handling the line. Tr. at 186-87.

12.     Mr. Berton was not on board the Shearwater at the time of the incident involving Ms. Tagle. Tr. at 327.


## CONCLUSIONS OF LAW

1.      The Court must adhere scrupulously to the mandate of the Court of Appeals on remand. *See Banks v. United States*, 741 F.3d 1268, 1276 (Fed. Cir. 2014) ("The mandate rule, encompassed by the broader law-of-the-case doctrine, dictates that 'an inferior court has no power or authority to deviate from the mandate issued by an appellate court.'" (quoting *Briggs v. Pa. R. Co.*, 334 U.S. 304, 306 (1948))). "The mandate rule bars relitigation not only of issues

actually decided on appeal, but of issues that 'fall within the scope of the judgment appealed from but [were] not raised . . . .'" *ResQNet.com, Inc. v. Lansa, Inc.*, 828 F. Supp. 2d 688, 696 (S.D.N.Y. 2011) (quoting *Amado v. Microsoft Corp.*, 517 F.3d 1353, 1360 (Fed. Cir. 2008)); *see also Montoya ex rel. Cummings v. Community Health Sys., Inc.*, 881 F.3d 793, 801 (10th Cir. 2018) ("Failing to raise an issue on appeal, or abandoning an issue that was initially raised, has the same consequences for that litigation as an adverse appellate ruling on that issue.").

2.     Having determined that Biggins lost control of the halyard because of "his failure to use due care and skill," *Tagle*, 873 F.3d at 184, the Second Circuit instructed the Court to consider next whether Petitioners had privity or knowledge of the negligence. *Id.* at 185 n.3.

3.     The Limitation of Liability Act limits the liability of a vessel owner for "any act, matter, or thing, loss, damage, or forfeiture, done, occasioned, or incurred, without the privity or knowledge of the owner." 46 U.S.C. § 30505(b). Pursuant to Section 30505(a), the liability of an owner for such a loss, incurred without the owner's privity or knowledge, is limited to "that owner's proportionate interest in the vessel and pending freight." *Id.* at § 30505(a). It is the vessel owner's burden to prove that it lacked privity or knowledge of the negligence. *See Tug Ocean Prince, Inc. v. United States*, 584 F.2d 1151, 1155 (2d Cir. 1978).

4.     "Privity and knowledge under [Section 30505] 'have been construed to mean that a shipowner knew or should have known that a certain condition existed.'" *Potomac Transp., Inc. v. Ogden Marine, Inc.*, 909 F.2d 42, 46 (2d Cir. 1990) (quoting *Hellenic Lines, Ltd. v. Prudential Lines, Inc.*, 730 F.2d 159, 166 (4th Cir. 1984)). The term "usually implies some degree of culpable participation or neglected duty on the shipowner's part; that, for example, it committed a negligent act . . . or through the exercise of reasonable diligence could have prevented the commission of the act . . . ." *Otal Inv. Ltd. v. M/V Clary*, 673 F.3d 108, 115 (2d

Cir. 2012) (quoting *Carr v. PMS Fishing Corp.*, 191 F.3d 1, 4 (1st Cir. 1999)). Where, as here, the owner of the vessel is a corporation, the Court considers the privity and knowledge of the "managing agent, officer, or supervising employee" of the vessel. *Id.* (quoting *Otal Inv. Ltd. v. M/V Clary*, No. 03-CV-4304 (HB), 2008 WL 2844019, at *15 (S.D.N.Y. June 23, 2008)).

5.      Petitioners have carried their burden of establishing that they and their agents had no privity or knowledge of the negligence that was the cause of Ms. Tagle's injuries.

6.      As the sole officer of Shearwater Holdings and Manhattan by Sail, Mr. Berton's knowledge may be imputed to the companies. There is, however, no evidence that Mr. Berton was aware or should have been aware that Biggins might handle the line carelessly. Mr. Berton was not on the vessel on the day of the incident and did not observe Biggins handle the line – he had no actual knowledge of Biggins's negligence. Nor is there any evidence that Mr. Berton was aware of a likelihood that Biggins would handle the line improperly. According to Mr. Berton, Biggins had been an exemplary deckhand, "very safe" and "very competent." Mr. Berton had received no complaints about Biggins's (or the other deckhands') handling of the lines.[2] There had been no prior, similar incident involving Biggins, or any other deckhand, in which a passenger was injured by a loose line since Mr. Berton took ownership of the vessel.

7.      Other potential avenues for imputing knowledge of Biggins's negligence to Mr. Berton are foreclosed by the mandate. As the Court has noted, Respondent raised a single issue on appeal: whether the Court should have applied *res ipsa loquitur* to infer that Mr. Biggins was negligent in his handling of the line. *See Manhattan by Sail, Inc. v. Tagle*, No. 16-607-cv, Dkt. 44, at 13-14 (2d Cir. June 9, 2016). Respondent did not appeal this Court's findings that: (i)

---

[2]      To the extent Mr. Berton was involved in preparing the Deckhand's Manual, it warns that lines must be handled carefully.

"The standard operating procedures on the Shearwater . . . were reasonable under the circumstances," (ii) "The crew of the Shearwater was properly trained and had substantial sailing experience,"[3] and (iii) Respondent "has not proven, by a preponderance of the evidence, that the line was not clipped to the sail at the outset of Ms. Tagle's cruise."  FF & CL ¶¶ 14-15 (Conclusions of Law).  Because Respondent could have, but did not, challenge these factual findings on appeal, the mandate rule bars relitigation of these issues; the crew of the Shearwater was competent and their procedures were reasonable under the circumstances.[4]  *See ResQNet.com, Inc.*, 828 F. Supp. 2d at 696.

8.      Under the circumstances, the Court finds Biggins's negligence to be analogous to a spontaneous navigational error not caused by a lapse in hiring, equipment, or procedures. Vessel owners such as Mr. Berton are ordinarily entitled to limit their liability for damage caused by such navigational errors for two reasons: "First, when the owner exercises due care in selecting the master, he discharges his obligations, and he may thereafter rely on the master's skill and expertise.  Second, when the owner is so far removed from the vessel that he can exert no control over the master's actions, he should not be taxed with the master's negligence."  *In re MO Barge Lines, Inc.*, 360 F.3d 885, 891 n.5 (8th Cir. 2004); *cf. Otal Inv. Ltd.*, 673 F.3d at 115 ("[T]he captain's negligence or navigational errors are not within the owner's knowledge or privity if the vessel's owner has selected a competent captain."); 3 Benedict on Admiralty § 42 (2015 revision) ("no case has been found where a shipowner . . . has been denied limitation because of liability arising out of an error of management or of navigation on a voyage

---

[3]      The Court need not address whether it was appropriate for Mr. Berton to delegate the training of the crew and procedures while the vessel was under weigh to the captain.  Regardless, the Shearwater's training and procedures were appropriate and reasonable under the circumstances.

[4]      Respondent has not argued that the Shearwater was unseaworthy or that a failure of equipment attributable to Mr. Berton was a contributing cause of Mr. Biggins's negligence.

committed by an employee whom the owner was warranted in believing to be competent with knowledge of his duties"). Like a spontaneous navigational error, Biggins spontaneously lost control of the line while under weigh, without warning, and not because of any flaw in his training or the vessel's procedures.

9.     While it is not clear that Captain Zimmerman's knowledge may be imputed to the vessel owner, it is clear that Captain Zimmerman also had no actual or constructive knowledge of Biggins's negligence.[5] Captain Zimmerman did not observe the incident, which occurred toward the bow while he was manning the wheel near the stern. Nor was Captain Zimmerman on notice that Biggins might mishandle the line. Biggins was an experienced sailor when he was hired, and he followed the Shearwater's standard operating procedures to the best of Captain Zimmerman's knowledge. Zimmerman had received no complaints about Biggins, and there was no evidence at trial that he had previously observed Biggins mishandle a line. As explained above, the Court has previously found that Biggins was an experienced deckhand and that the vessel had in place reasonable procedures.

10.     In sum, the Court finds that Petitioners had no knowledge or privity with respect to Biggins's negligence. This conclusion is not surprising given the theory of the case pursued by Respondent at trial and the history of this litigation. As the Court has explained, Respondent's primary argument at trial was that a lapse in policy – the failure to require the halyard to be clipped before each voyage – caused her injury. The negligence identified by the Second Circuit is narrower and involves Biggins's loss of control of the line, which, in the

---

[5]     As noted above, the owner of a vessel is typically not liable for the negligence of the captain if he has selected a competent captain and properly outfitted the vessel. *See Otal Inv. Ltd.*, 673 F.3d at 115. This principle would be an illusory protection for the vessel owner if a competent captain's knowledge of a deckhand's negligence could, nonetheless, be imputed to the owner. On the other hand, under certain circumstances, the captain may be an officer of the vessel. *See In re Potomac Transp., Inc.*, 909 F.2d at 46. The Court need not resolve this issue because, regardless, Captain Zimmerman had in place proper procedures, selected a competent deckhand in Biggins, and had no knowledge of Biggins's mishandling of the line.

absence of other evidence of cause, proves that Biggins failed to handle the line with due care. There was no evidence presented at trial to connect that negligence to the Petitioners. Neither Mr. Berton nor Captain Zimmerman saw Biggins mishandle the line nor did they have any reason to suspect he would mishandle the line. Respondent also failed to appeal from the Court's finding that Biggins and Captain Zimmerman were competent and that the vessel's procedures were adequate. With no notice of Biggins's negligence (or the possibility that Biggins would be careless) and having selected a competent captain, employing proper procedures, Petitioners are entitled to limit their liability for the incident involving Ms. Tagle.

## CONCLUSION

The parties are directed to appear for a status conference with the Court at **10:00 a.m. on September 28, 2018**. By **September 21, 2018**, they must provide the Court with a joint pre-conference letter summarizing their proposed next steps in this litigation.

**SO ORDERED.**

Date: **September 14, 2018**
     **New York, NY**

**VALERIE CAPRONI**
**United States District Judge**